IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02575-CMA-STV

RAYMOND COLEMAN,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Partial Summary Judgment. (Doc. # 37.) Therein, State Farm requests that the Court enter summary judgment in its favor on Plaintiff Raymond Coleman's claims for common law bad faith and statutory unreasonable delay or denial of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115. The Court denies the Motion for the following reasons.

    **I.**    **BACKGROUND[1]**

On August 24, 2018, Mr. Coleman was stopped at an intersection in Loveland, Colorado when he was rear-ended by another driver. (Doc. # 37 at 2; Doc. # 42-5 at 345–46.) Mr. Coleman sought medical treatment after the crash and reported "severe

---

[1] Unless otherwise indicated, the following material facts are undisputed.

low back pain radiating down entire left leg." (Doc. # 42 at 4; Doc. # 42-2 at 1.) Dr. Grant Taylor, D.O., noted that Mr. Coleman presented with "[e]xacerbation of Chronic intermittent low back pain with radiation down left leg after motor vehicle accident that occurred on 8/24/18." (Doc. # 42-2 at 2.) He referred Mr. Coleman to spine surgeon Dr. Douglas Beard. (*Id.*) On September 17, 2018, Mr. Coleman underwent a decompressive lumbar semi-hemilaminotomy with discectomy at L5-S1. (*Id.* at 6.)

At the time of the crash, Mr. Coleman was insured by State Farm under two automobile policies. (Doc. 37 at 2.) Each of the policies has a $500,000 uninsured motorist ("UM")/underinsured motorist ("UIM") benefit limit. (*Id.*) Mr. Coleman notified State Farm of the crash immediately, and on October 31, 2018, Mr. Coleman's counsel informed State Farm of a potential UIM claim. (Doc. # 42-2 at 21; Doc. # 42-4 at 288–89.) State Farm assigned a Claims Analyst, Rhonda Norris, to handle Mr. Coleman's UIM claim on November 7, 2018. (Doc. # 42-2 at 20.)

In January 2019, with State Farm's consent, Mr. Coleman settled with the underinsured motorist for his liability limits of $25,000. (Doc. # 37 at 2; Doc. # 42-2 at 48.) On January 17, 2019, Mr. Coleman sent a letter to State Farm formally requesting an evaluation of his claim for UIM benefits along with attached relevant medical records. (Doc. # 42-4 at 286–87.) In reviewing the records, Ms. Norris noted that Mr. Coleman had a prior history of problems with his lumbar disc. (Doc. # 42-2 at 17.) On February 1, 2019, Ms. Norris's Team Manager, Mr. Todd Bierbaum, wrote:

> Have we had SMR review? I am questioning a compression still [sic] injury from a rear end impact. It appear [sic] this would need a top down force to

>create and we have back and forth. Let's develop this a bit. Start with SMR and we may wish to have IME.[2]

(*Id.*) A Specialists – Medical Resources ("SMR") reviewer, Ms. Thelma Love, reviewed the medical file and advised that State Farm may want to proceed with an Independent Medical Evaluation ("IME") to clarify if the rear-end impact resulted in surgery or if surgery may have been indicated in the past. (*Id.* at 16.)

On February 18, 2019, State Farm sent a letter informing Mr. Coleman that "it is necessary for State Farm to complete an Independent Medical Examination in order to further evaluate the medical documentation submitted." (Doc. # 37-2 at 1.) As such, State Farm requested all of Mr. Coleman's records prior to the accident. (*Id.*) On March 17, 2019, Mr. Coleman provided a signed Medical Authorization. (Doc. # 42-4 at 303–04.) After State Farm did not confirm receipt, Mr. Coleman's counsel provided the signed authorization again on April 5, 2019. (*Id.* at 301–03.) On April 29, 2019, Mr. Coleman's counsel requested that State Form provide proposed doctors and dates in order to schedule an IME while waiting for medical records to arrive. (*Id.* at 285.)

The parties dispute whether State Farm acted proactively to obtain records and resolve Mr. Coleman's UIM claim during several months in 2019 and 2020. *See* (Doc. # 42 at 11–12.) State Farm first requested medical records from Mr. Coleman's providers on May 1, 2019. (Doc. # 42-2 at 43–46.) In those letters, State Farm mistakenly requested records only from the date of the accident to present, rather than records prior to the accident. (*Id.*) On May 6, 2019, Ms. Norris wrote to Mr. Coleman's counsel

---

[2] SMR stands for "Specialists – Medical Resources" and is an internal records review process. (Doc. # 42-4 at 306.) IME stands for Independent Medical Examination. (*Id.* at 305.)

3

stating that State Farm had requested the records and would not schedule the IME until those records arrived. (*Id.* at 42.) Ms. Norris reiterated to Mr. Coleman's counsel via letter on June 5, 2019, that State Farm had "requested the medical records" and would not schedule an IME yet. (*Id.* at 41.) On June 14, 2019, Ms. Norris again wrote to Mr. Coleman's counsel and stated, "[t]o date, in response to our requests for prior records, State Farm has only received duplicate records related to the above-referenced accident except for one medical record submission from UC Health for 2014 treatment." (*Id.* at 40.) The same day, Ms. Norris reviewed the claim file and asked her team to "re-request ALL RECORDS INCLUDING PRIORS FROM FRONT RANGE BRAIN AND SPINE AND GRANT TAYLOR, DO." (*Id.* at 15.)

On June 19, 2020, State Farm sent letters to Mr. Coleman's medical providers requesting records prior to the motor vehicle accident in August 2018. (*Id.* at 37.) It appears undisputed that this is the first time that State Farm requested the *prior* medical records it asserted it needed in order to conduct an IME to evaluate Mr. Coleman's UIM claim. *Compare* (Doc. # 42 at 11), *with* (Doc. # 51 at 3). After one of Mr. Coleman's medical providers, Banner Health, informed State Farm that the medical authorization was not HIPAA compliant, Mr. Coleman's counsel sent State Farm the prior records from Banner Health and Grant Taylor, D.O. on July 18, 2019. (Doc. # 42-2 at 13–14; Doc. # 42-4 at 282.)

On July 25, 2019, and August 19, 2019, Ms. Norris wrote to Mr. Coleman's counsel and stated that State Farm still was not in receipt of prior records from Front Range Brain and Spine. (Doc. # 42-2 at 35–36; Doc. # 51-3; Doc. # 51-5.) Ms. Norris

4

also wrote a letter to Front Range Brain and Spine requesting prior records on August 8, 2019. (Doc. # 51-4.) The claim file indicates that Ms. Norris called Front Range Brain and Spine on September 13, 2019. (Doc. # 51-6.) On October 10, 2019, Ms. Norris again wrote a letter to Mr. Coleman's counsel stating that State Farm was waiting for prior records from Front Range Brain and Spine. (Doc. # 42-2 at 33–34.) Mr. Coleman's counsel requested prior records from Front Range Brain and Spine and submitted those records to State Farm via email on October 23, 2019. (Doc. # 42-4 at 290.)

State Farm replaced Ms. Norris as the Claim Specialist assigned to Mr. Coleman's case with Betsy Nesmith on November 6, 2019. (Doc. # 42-5 at 354–55.) It appears that Ms. Nesmith did not take any action on the file from November 2019 through February 2020. *Compare* (Doc. # 42 at 12–13), *with* (Doc. # 52 at 4). The claim file reflects that on December 10, 2019, State Farm also received Mr. Coleman's prior records directly from Front Range Brain and Spine, although the records were "not marked correctly" and were not input into the claim file until February 5, 2020. (Doc. # 42-2 at 12, 56.)

On January 27, 2020, Mr. Coleman's counsel again wrote to State Farm requesting an evaluation and payment of benefits. (Doc. # 42-4 at 281.) Ms. Nesmith responded via letter on February 17, 2020, and informed Mr. Coleman's counsel for the first time that she had been reassigned as the Claim Specialist on the claim and was reviewing the documents State Farm had received. (Doc. # 42-2 at 32.) In the claim file, Ms. Nesmith noted that it "[a]ppears that [Mr. Coleman's counsel] may have sent priors previously." (*Id.* at 12.) A month later, on March 19, 2020, Ms. Nesmith noted in the

5

claim file that State Farm had received the records directly from Front Range Brain and Spine three months earlier, on December 10, 2019. (*Id.* at 11.) The same day, Ms. Nesmith wrote a letter to Mr. Coleman's counsel stating that she had a chance to review the file and that State Farm would now schedule an IME. (*Id.* at 31.)

There appears to have been no action on the claim for two more months, which State Farm asserts is attributable to the COVID-19 pandemic. (Doc. # 37 at 4.) On May 19, 2020, Mr. Bierbaum left a note in the claim file asking about the status of an IME. (Doc. # 42-2 at 10.) He wrote: "These types of exams were not available for a time due to COVID but are we in a position to schedule one now or at lease [sic] have a UR done?" (*Id.*) State Farm sent a referral for IME request to Certified Medical Consultants on June 9, 2020. (*Id.* at 9.) The IME took place on June 26, 2020, 490 days after State Farm first informed Mr. Coleman that it would require an IME to evaluate his UIM claim. (Doc. # 42 at 14.)

The examiner for the IME was A.C. Lotman, M.D., an orthopedic surgeon. (Doc. # 37 at 4.) Dr. Lotman opined that Mr. Coleman had chronic low back pain aggravated by the August 2018 accident and that treatment he received, including the surgery, was necessary and related to the accident. (Doc. # 37-2 at 17–25.) Dr. Lotman further opined that Mr. Coleman's MRI findings showed "significant change" that "would be 100 percent related to the motor vehicle accident" and that Mr. Coleman was impaired from the date of the injury and for six months following surgery on September 17, 2018. Finally, Dr. Lotman opined that Mr. Coleman "will need follow-up by Grant Taylor, D.O. for pain medicine determinations and ordering," that the current treatment plan of home

6

exercises "is appropriate," and that no further treatment for his lower back condition was needed. (*Id.* at 23–24.)

After receiving Mr. Lotman's report, State Farm sent Mr. Coleman a letter on July 24, 2020, offering to settle the claim for $30,013.95. (*Id.* at 26.) State Farm asserted that this amount included past medical bills in the amount of $25,707.28, $18,262.09 for lost wages, and $12,000 for pain and suffering. (*Id.*) The letter stated that State Farm "evaluated the general/subjective damages in a range of value which starts at $12,000.00." (*Id.*) Along with the letter, State Farm tendered a *Fisher* payment in the amount of $18,969.37, less the $12,000 calculated for general damages. (*Id.*)

With respect to general/subjective damages, Ms. Nesmith testified at her deposition that she did not reach any specific conclusion about Mr. Coleman's pain and suffering, severity of pain, mental anguish, and inconvenience. (Doc. # 42-5 at 339.) When asked how she arrived at $12,000 as a reasonable amount for pain and suffering, Ms. Nesmith repeatedly testified that she considered all of the information in Mr. Coleman's medical records to arrive at that figure. (*Id.* at 335–36.) She further testified that she has a "vague understanding" of the procedure that Mr. Coleman underwent. (*Id.* at 342.) A note in the claim file indicates that State Farm took the position that Mr. Coleman required no further treatment and therefore no amount was owed for future medical expenses. (Doc. # 42-2 at 7.)

Mr. Coleman's counsel informed State Farm that Mr. Coleman was still treating for his crash related injuries and obtaining medical and billing records. (Doc. # 37-1 at 28.) On May 14, 2021, State Farm wrote to Mr. Coleman's counsel and requested a

7

status of response to its July 24, 2020 offer of settlement and the status of Mr. Coleman's treatment and any new medical bills or records. (*Id.* at 29.) Mr. Coleman's counsel responded that they were still pending updated medical and billing records. (*Id.* at 31.) On July 28, 2021, a year after State Farm's initial settlement offer, Mr. Coleman sent a supplemental demand letter with additional medical information. (*Id.* at 32–34.) State Farm responded that it needed time to review the new material and, in the meantime, increased its offer to $36,969.37. (*Id.* at 35–36.)

Mr. Coleman filed suit against State Farm in state court on August 20, 2021 (Doc. # 5), and State Farm removed the action to this Court. In his Complaint, Mr. Coleman asserts three claims for relief: (1) breach of insurance contract for unpaid UIM benefits; (2) common law bad faith; and (3) unreasonable delay and denial of insurance benefits pursuant to Colo. Rev. Stat. § 10-3-1115.

State Farm filed the instant Motion for Partial Summary Judgment on Mr. Coleman's second and third claims on November 22, 2022. (Doc. # 37). Mr. Coleman submitted his Response (Doc. # 42), and State Farm followed with its Reply (Doc. # 51). The matter is now ripe for review.

## II.     LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such

8

that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th

Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III.     DISCUSSION

State Farm argues that it is entitled to summary judgment on Mr. Coleman's claims for common law bad faith and statutory unreasonable delay or denial of insurance benefits on the basis that Mr. Coleman cannot establish that State Farm acted unreasonably in handling his claim. (Doc. # 37 at 6–7.) In response, Mr. Coleman contends that a reasonable jury could determine that State Farm acted unreasonably by delaying scheduling an IME for 490 days and by failing to adequately consider several categories of UIM benefits for future medical expenses, future physical impairment, disability, pain and suffering, loss of enjoyment of life, or any other recoverable element of general damage. (Doc. # 42 at 27–28.) The Court agrees with Mr. Coleman that summary judgment is not appropriate.

Under Colorado law, both common law and statutory bad faith claims require a showing of unreasonable conduct. *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *5 (D. Colo. Sept. 30, 2021). A common law bad faith claim requires the insured to prove "(1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1114 (D. Colo. 2012). A statutory bad faith claim, meanwhile, requires the insured to prove that the insurer denied or delayed the payment of insurance benefits without a reasonable basis. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 23, 419

P.3d 985, 990 ("*Fisher I*"), *aff'd by State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 27, 418 P.3d 501, 506 ("*Fisher II*"); *see* Colo. Rev. Stat. § 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.").

What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). The reasonableness of an insurer's conduct is measured objectively based on industry standards. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). Under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). However, "an insurer cannot rely on the mere fact that the claim was fairly debatable in order to prove that it acted reasonably as a matter of law." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1206 (D. Colo. 2022). The central question "is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim." *Bankr. Est. of Morris*, 192 P.3d at 523.

In the instant case, the Court finds that State Farm has not established that the undisputed material facts show that it is entitled to summary judgment on the issue of whether it acted unreasonably in handling Mr. Coleman's claim. To the contrary, a reasonable jury could determine that State Farm engaged in several instances of

11

unreasonable conduct, including but not limited to (1) failing to request prior medical records for several months while simultaneously assuring Mr. Coleman it had "requested all relevant records"; (2) delaying in evaluating Mr. Coleman's claim or communicating with Mr. Coleman's counsel for several months at the end of 2019 and beginning of 2020, despite having received all prior medical records; (3) failing to conduct an IME for at least 490 days after first demanding an IME; and (4) failing to adequately consider Mr. Coleman's future medical expenses, future physical impairment, disability, pain and suffering, loss of enjoyment of life, or other recoverable elements of general damage in light of the injury he sustained and the medical treatment he required. A reasonable jury could also determine that State Farm recklessly disregarded its unreasonable conduct by sending out incorrect records requests, taking no action on the claim for several months despite having received all prior medical records, and either inadequately considering or omitting several categories of general damages from its award, including Mr. Coleman's future medical expenses and future pain and suffering. *See, e.g.*, *Gardner v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01557-NYW-MDB, 2022 WL 16792204, at *6 (D. Colo. Nov. 8, 2022) (finding that State Farm was not entitled to summary judgment on a common law bad faith claim in part because the plaintiff submitted evidence that State Farm did not consider certain categories of UIM benefits for non-economic damages).

Moreover, the Court finds that genuine disputes of material fact preclude summary judgment on Mr. Coleman's bad faith claim and unreasonable delay or denial claim. These genuine disputes of material fact include, but are not limited to:

- whether and to what extent the COVID-19 pandemic impeded State Farm's ability to complete its investigation and evaluation of the claim;

- whether State Farm's investigation of the claim was reasonably diligent;

- whether Ms. Nesmith adequately considered Mr. Coleman's pain and suffering, mental anguish, and inconvenience in evaluating general damages at $12,000;

- whether State Farm acted unreasonably by failing to consider or account for any future damages in its evaluation; and

- whether State Farm incorrectly or unfairly interpreted Mr. Lotman's IME report to determine that Mr. Coleman was not entitled to any UIM benefits for future medical needs or future general damages.

Because of these and other genuine disputes of material fact, the Court finds that the reasonableness of State Farm's conduct is a question appropriately reserved for the jury. *Vaccaro*, 275 P.3d at 759.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that State Farm's Motion for Partial Summary Judgment (Doc. # 37) is DENIED.

DATED:  April 26, 2023

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
Senior United States District Judge

13